UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                       Case No. 18-CR-161

KATHLEEN A. FETEK,

        Defendant.

## PLEA AGREEMENT

1.    The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Richard G. Frohling, Assistant United States Attorney, and the defendant, Kathleen A. Fetek, individually and by attorney John Campion, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.    The defendant has been charged in a single-count indictment, which alleges a violation of Title 18, United States Code, Section 1341.

3.    The defendant has read and fully understands the charge contained in the indictment. She fully understands the nature and elements of the crime with which she has been charged, and the charge and the terms and conditions of the plea agreement have been fully explained to her by her attorney.

4.    The defendant voluntarily agrees to plead guilty to the offense alleged in the indictment, which is set forth in full as follows:

## THE GRAND JURY CHARGES:

1. Beginning before January 2014, and continuing through at least January 2017, in the State and Eastern District of Wisconsin and elsewhere,

**KATHLEEN A. FETEK**

devised and participated in a scheme to defraud individuals, charitable organizations, and other beneficiaries of estates being administered by her father's law firm.

### Background

2. Until his death in September 2016, Fetek's father operated Fetek Law Offices, S.C., in Racine, Wisconsin. The firm's practice included probate and related matters.

3. Before 2012, the law firm arranged to have Fetek serve as the real estate agent when selling properties owned by estates being administered by the firm.

4. In 2012, Fetek also began working directly for the firm, assisting her father with his law practice in exchange for an hourly wage.

### The Scheme to Defraud

5. By 2014, Fetek designed a scheme to defraud beneficiaries and to convert money belonging to the estates being administered by the law firm to Fetek's own use.

6. As part of the scheme:

   a. Fetek wrote checks to herself from the firm's account, often forging the signature of her mother. Fetek cashed the checks at banks, liquor stores, and other locations.

   b. Fetek prepared and mailed materially false distribution summaries and "Estate Account" documentation to beneficiaries.

   c. Fetek caused the filing of materially false documents in probate court.

7. When delivering the firm's records to a new attorney following her father's death, Fetek concealed the scheme by providing copies of checks that had been altered to appear as if they had been written to beneficiaries, when in fact they had been made payable to Fetek.

8. As a result of the scheme, Fetek wrongfully obtained in excess of $775,000.

### *Execution of the Scheme*
9. On or about December 15, 2016, in the State and Eastern District of Wisconsin, for the purpose of executing the scheme, Fetek knowingly caused a letter and a materially false "Estate Account" form to be delivered by United States mail to R.C., a beneficiary of an estate being handled by the law firm.

*All in violation of Title 18, United States Code, Section 1341.*

5. The defendant acknowledges, understands, and agrees that she is, in fact, guilty of the offense set forth in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish her guilt beyond a reasonable doubt:

> James Fetek was a lawyer practicing in Racine, Wisconsin. In the period relevant to this case, he was a sole practitioner operating a firm known as the Fetek Law Offices, S.C. His practice included probate work. Fetek's daughter, Kathleen, was employed by the firm and assisted with her father's law practice. By 2014, James Fetek began having health problems, and Kathleen Fetek assumed greater responsibilities, including interacting with clients, drafting documents, and making ledger entries.

> By 2014, Kathleen Fetek devised a scheme to wrongfully obtain money from the firm's trust account. The scheme involved writing checks to herself from the firm's trust account, signing the checks as her mother or father (who had signature authority), and cashing the checks at banks, liquor stores, and other locations. During this period, Kathleen Fetek was gambling frequently. Between January 2015 and December 2016, she lost over $212,000 at a casino in Milwaukee.

> As part of her scheme, Kathleen Fetek prepared and mailed materially false distribution summaries and "Estate Account" documentation to beneficiaries of the estates to which the stolen funds belonged. For example, on or about December 15, 2016, in Racine, Wisconsin, Kathleen Fetek caused a letter by United States mail to R.C., a beneficiary of the estate of Nancy Poulson. This letter was signed by Kathleen Fetek on behalf of the firm, was on the firm's letterhead, and was accompanied by an "Estate Account" form that was materially false in that it concealed amounts that Kathleen Fetek had stolen from the estate.

> When delivering records to a new attorney following her father's death in September 2016, Kathleen Fetek provided copies of checks that she had altered to appear as if they had been written to beneficiaries, when in fact they had been made payable to her.

3

       The FBI's review of the law firm's bank identified over $778,000 in checks written to Kathleen Fetek. The checks affected 25 separate estates and over 100 individual victims.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

6.     The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment of 20 years and a maximum fine of $250,000. The offense also carries a mandatory special assessment of $100 and a maximum of 3 years of supervised release. The parties further recognize that a restitution order may be entered by the court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraph 28 of this agreement.

7.     The defendant acknowledges, understands, and agrees that she has discussed the relevant statutes as well as the applicable sentencing guidelines with her attorney.

## ELEMENTS

8.     The parties understand and agree that in order to sustain the charge of mail fraud, as set forth in the indictment, the government must prove each of the following propositions beyond a reasonable doubt:

> First, the defendant knowingly devised or participated in a scheme to defraud;
> Second, the defendant did so with intent to defraud;
> Third, the scheme involved a materially false or fraudulent pretense or representation; and
> Fourth, for the purpose of carrying out the scheme, the defendant caused the use of the United States mail in the manner charged in the indictment.

## SENTENCING PROVISIONS

9.     The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days

4

before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

10. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

11. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in paragraph 4. The defendant acknowledges and agrees that her attorney in turn has discussed the applicable sentencing guidelines provisions with her to the defendant's satisfaction.

12. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

### **Sentencing Guidelines Calculations**

13. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

5

## Relevant Conduct

14. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

## Base Offense Level

15. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in the indictment is 7 under Sentencing Guidelines Manual § 2B1.1(a)(1).

## Specific Offense Characteristics

16. The parties acknowledge and understand that the government will recommend to the sentencing court that the following specific offense characteristics apply in this case:

   a. A 14-level increase for loss between $550,000 and $1.5 million, pursuant to Sentencing Guidelines Manual § 2B1.1(b)(1)(H); and

   b. A 2-level increase for an offense involving more than 10 victims, pursuant Sentencing Guidelines Manual § 2B1.1(b)(2)(A)(i).

The parties acknowledge and understand that the defendant need not join in these recommendations.

## Abuse of Trust

17. The parties acknowledge and understand that the government will recommend to the sentencing court that a 2-level increase under Sentencing Guidelines Manual § 3B1.3 applies because the defendant abused a position of trust. The parties further acknowledge and understand that the defendant will not join in this recommendation.

6

## Acceptance of Responsibility

18. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. If the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of her intention to enter a plea of guilty.

## Sentencing Recommendations

19. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

20. Both parties reserve the right to make any recommendation any matters not specifically addressed by this agreement.

21. The government agrees to recommend a sentence within the guidelines as determined by the court. The government understands that the defendant is free to argue for any sentence she deems as reasonable and appropriate.

## Court's Determinations at Sentencing

22. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum

7

penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

23. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

24. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

25. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form.

### Fine

26. The parties agree to recommend that no fine be imposed given the defendant's restitution obligations.

8

## Special Assessment

27.     The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

## Restitution

28.     The defendant agrees to pay restitution as ordered by the court. The parties acknowledge and understand that the government will recommend to the sentencing court that the defendant pay restitution totaling $788,277.17, which represents a conservative calculation of money converted to the defendant's use. The parties acknowledge and understand that given the complexities of determining the amount due to each specific victim, the government intends to request that the court appoint a special master to assist with the restitution determination. The defendant understands that because restitution for the offense is mandatory, restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

## DEFENDANT'S WAIVER OF RIGHTS

29.     In entering this agreement, the defendant acknowledges and understands that she surrenders any claims she may have raised in any pretrial motion, as well as certain rights which include the following:

    a.  If the defendant persisted in a plea of not guilty to the charges against her, she would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

    b.  If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual

9

        bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

    c.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

    d.    At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and she would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on her own behalf. The defendant would be entitled to compulsory process to call witnesses.

    e.    At such trial, defendant would have a privilege against self-incrimination so that she could decline to testify and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify on her own behalf.

30. The defendant acknowledges and understands that by pleading guilty she is waiving all the rights set forth above. The defendant further acknowledges the fact that her attorney has explained these rights to her and the consequences of her waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

31. The defendant acknowledges and understands that she will be adjudicated guilty of the offense to which she will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

10

Case 2:18-cr-00161-LA   Filed 11/01/18   Page 10 of 14   Document 10

32. The defendant knowingly and voluntarily waives all claims she may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

## Further Civil or Administrative Action

33. The defendant acknowledges, understands, and agrees that the defendant has discussed with her attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## MISCELLANEOUS MATTERS

34. The defendant agrees to make herself available and cooperate in good faith in any civil actions brought by victims against the Fetek law firm or its insurer.

## GENERAL MATTERS

35. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

36. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

37. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

11

38. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

### Further Action by Internal Revenue Service

39. Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charges alleged in the indictment.

### EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

40. The defendant acknowledges and understands if she violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of her breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and her attorney have signed a proffer letter in connection with this case, then the

defendant further acknowledges and understands that she continues to be subject to the terms of the proffer letter.

## **VOLUNTARINESS OF DEFENDANT'S PLEA**

41. The defendant acknowledges, understands, and agrees that she will plead guilty freely and voluntarily because she is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 10/29/18

_____
KATHLEEN A. FETEK
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 10/29/2018

_____
JOHN CAMPION
Attorney for Defendant

For the United States of America:

Date: 11/1/18

_____
MATTHEW D. KRUEGER
United States Attorney

Date: 11/1/18

_____
RICHARD G. FROHLING
Assistant United States Attorney

14