UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                  Case No. 18-CR-161 (LA)

KATHLEEN A. FETEK,

      Defendant.

## SENTENCING MEMORANDUM

The United States submits this memorandum in advance of Ms. Fetek's sentencing. For the reasons set forth below, the Court should impose a guideline sentence of 48 months in prison.

**I.    Applicable legal framework.**

When determining an appropriate sentence, courts must consider the factors set forth in 18 U.S.C. § 3553(a). *See United States v. Harris*, 490 F.3d 589, 593 (7th Cir. 2007). These factors include:

(1)    The nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    The need for the sentence imposed to:

    (A)    Reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    Afford adequate deterrence to criminal conduct;

    (C)    Protect the public from further crimes of the defendant; and

    (D)    Provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    The kinds of sentences available;

(4) The advisory guideline range;

(5) Any pertinent policy statements issued by the Sentencing Commission; and

(6) The need to avoid unwarranted sentence disparities.

*See* 18 U.S.C. § 3553(a).

**II. The Court should impose a sentence of 48 months.**

Balancing the above factors, the Court should impose a 48-month sentence. To her credit, Ms. Fetek has no prior criminal history, has maintained employment, and has assisted with raising her grandson. However, these positives are outweighed by the seriousness of her offense, her abuse of a position of trust, her repeated acts of dishonesty, and the financial and emotional impact on a large number of victims. A sentence below the guidelines would fail to promote respect for the law and, when viewed from the perspective of the victims and the public, fail to provide just punishment. Finally, a guideline sentence would avoid any unwarranted disparities.

**A. Ms. Fetek committed a serious offense and caused severe financial and emotional harm to a large number of victims.**

The nature and circumstances of Ms. Fetek's offense are set forth in the Presentence Investigation Report (PSR). *See* R. 15 at ¶¶ 9-24. In a nutshell, Ms. Fetek used her position at her father's law firm to steal over $778,000 from at least 24 estates being administered by the firm. This was not simply an occasional theft or conduct undertaken without deliberation or planning. Rather, Ms. Fetek wrote checks to herself approximately 225 times over 27-month period. On each occasion, she had to change a payee or forge a signature, typically impersonating her mother. She cashed the checks at banks, liquor stores, and other locations. She also made false entries in client records to disguise her conduct. Ms. Fetek herself has acknowledged this. *See id.* ¶ 29. Her efforts to conceal the fraud from outsiders also were

2

substantial, altering bank records to attempt to deceive successor counsel for several estates, and causing false accounting statements to be filed in probate court.

Ms. Fetek also repeatedly lied to beneficiaries to carry out her fraud. Ms. Fetek took a job at the firm so her father would not have to retire. *See id.* ¶ 34. She was hired despite long-term substance abuse issues. As her father's condition deteriorated, Ms. Fetek began performing substantive work on the estates and effectively "running the office." While essentially practicing law with little or no supervision by her father, Ms. Fetek lied to the firm's clients to perpetuate her fraud. This was a direct betrayal of the trust of the over 100 intended beneficiaries of the 24 impacted estates. *See id.* ¶ 42; *see also* March 11, 2019, Addendum to the PSR (R. 17 at 1-5).

Given the size of the firm, the amount of money taken by Ms. Fetek is staggering. However, even this figure does not tell the whole story. First, the $778,000 loss figure represents only those checks directly written to Ms. Fetek. Victims have reported that cash, jewelry, and personal property also went missing from inventories of decedents' homes. On occasion, when beneficiaries sought to question this, Attorney Fetek directed the clients to Ms. Fetek, who at times also served as the listing real estate agent when the homes were sold.

Second, Ms. Fetek's fraud caused not only direct financial harm but also severe emotional harm. For some victims, the financial loss was substantial – either in amount or impact. Some of the intended beneficiaries had special needs and could have greatly benefitted from the amounts due them. Others were older or infirm. For one estate, the stolen money was meant for a veteran's marker for the decedent's grave. But for other victims, the greater loss was the overwhelming sense that Ms. Fetek had betrayed the trust of their deceased loved ones, wiping out the fruits of years of labor and canceling their final wishes.

3

Multiple victims have described this harm in statements to the Probation Office. *See* R. 15 at 36-60. Examples of such comments are as follows:

- I don't feel the money was taken away from me because I never had it. I feel it was stolen from my beloved father, which infuriates me. My father was a decent, honest, and kind man. A WWII Vet who fought for our freedom and despite his injuries that he would suffer with for the rest of his life, he went to work every day to support his family. He did not steal. He did not feel like he was entitled to anything at all. I am glad and forever thankful I was raised by such a fine person. My mother died was when I was young and he raised me by himself. This is [whose] money she stole, and it upsets me greatly. *Id.* at 52.

- We thought we could trust them, but I guess not. I am very upset about this more than the actual money. I don't even know why the money was still under the control of the law firm [when] the crime was committed as my father passed away in 2001. *Id.* at 51.

- Kathleen Fetek took it upon herself to ignore, override, and selfishly destroy the final wishes of Marie Woiteshek who had spent a lifetime accumulating and carefully preparing a substantial estate to be distributed to her heirs upon her death.
…
My aunt … was a kind, generous person who carefully and sincerely prepared for her heirs to receive substantial monetary gifts upon her death. My portion…was intended by my aunt to supplement my retirement. Loss of this…is both an emotional and financial burden on my life that is impossible to replace. *Id.* at 39.

- Unfortunately, two beneficiaries have already passed on. They certainly could have used the money for many things. My Aunt Nancy was an elementary school teacher… It took her many years to save the money. It took Kathleen Fetek a number of months to embezzle and spend hundreds of thousands of dollars." *Id.* at 43.

- As the personal representative to my aunt's estate, I have been emotionally distraught and angered by Ms. Fetek's actions. [We] have had to pay for a private law firm, and another probate attorney due to Ms. Fetek's abhorrent actions. I have and continue to suffer anxiety, stress, and frustration from all that's happened.
…
My aunt was a public school teacher and saved every penny she made. She trusted James Fetek and his family implicitly. [Neither] my aunt, nor anyone else Ms. Fetek stole from, deserved this. I am deeply affected by the fact that we now have to spend over 100,000 just to get justice done… *Id*. at 53, 54.

- My aunt Nancy Poulson worked diligently for over 50 years and put money aside. . . to show her family her financial diligence and love. Nancy Poulson never had children. She loved her nieces and nephews, friends, and her church. My Aunt … planned out these finances for what was important to her. Kathy Fetek made a

4

Case 2:18-cr-00161-LA   Filed 03/13/19   Page 4 of 8   Document 18

mockery of her life's diligent plan…. Kathy Fetek has mocked her whole life plan for after her death! I was going to take my portion for a down payment for small house for myself and my handicapped son, which has not happened because of your greedy, selfish actions. You have caused great stress and pain!!!" *Id.* at 57.

- She knew that I was disabled and in a wheel chair, and stole my money!!! I can't settle my Dad's estate until this is Done! *Id.* at 59, 60.

- My husband and I live a very modest life. We have a home and share one vehicle. We both work and do our best to save for our future. It disheartens me that I must write this letter to explain why I should receive the money my aunt left me even though she went through the proper legal channels to make sure everyone got what she had saved her entire life for. Why Kathy Fetek felt she had the right to take money from anybody…is truly despicable. My aunt left myself and other family members a monetary inheritance so that she could make a difference not only for ourselves but for the next generation of her family….One day I will be in this position and hope the future generation of my family does not have to endure what I am currently dealing with….Kathy Fetek consciously stole money without any fear of consequences and caused undue hardships for a lot of people, Not only did she rob them of money but memories as well and perhaps [the intended beneficiaries that already have] passed would have been able to get better care for themselves at the end of their lives. *Id.* at 47-48.

Finally, victims have been particularly offended by the fact that Ms. Fetek used a substantial portion of the stolen money to fund her drug use and entertain herself through regular trips to a casino in Milwaukee. As the PSR explains, she used cocaine on a daily basis for 25 years. *Id.* ¶ 77. In addition, she was in the highest tier of gamblers at the casino, receiving free food, drinks, rooms, and a personal casino host. *Id.* ¶ 21. Ms. Fetek's status at the casino is not surprising given that she lost over $212,000 there in 2015 and 2016 alone. *Id.* ¶ 71. One victim even reported that Ms. Fetek had even taken a limousine to the casino.

In sum, the nature and circumstances of the offense support a guideline sentence.

**B.    Ms. Fetek's history and characteristics also support a 48-month sentence.**

Ms. Fetek's history and characteristics also support a guideline sentence. On the positive side, Ms. Fetek has no prior criminal history, maintained steady employment at several restaurants, and has helped care for her grandson. However, her offense involved repeated acts

5

of dishonesty over a prolonged period. She routinely lied to victims, while at the same time conveying that they could trust the firm and her work on behalf of their deceased loved one. She also submitted false documents to the probate court and lied to the attorney who took over several estates. In addition, she has a long history of daily drug use and initially lied to her Pretrial Services Officer about her continued use while on pretrial release, falsely claiming that positive tests were caused by a medical condition. Finally, she used the tax-free proceeds of her fraud to engage in extensive gambling.

### C. The factors set forth in § 3553(a)(2) warrant a guideline sentence.

The factors set forth in § 3553(a)(2) also support a 48-month prison sentence. A sentence below the guidelines range would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment. As detailed above, this case involved: (1) a theft of over $778,000 from over 24 estates and at least 100 intended beneficiaries; (2) abuse of a position of trust; (3) repeated acts of dishonesty; and (4) emotional harm and trauma to beneficiaries.

Many victims already feel that the legal system has let them down. As one victim put it:

> I have lost a great deal of faith and trust in the legal system for properly dispersing funds from the estate of loved ones. I cannot believe that this embezzlement was this easy and lasted for such a substantial amount of time. Where are the safeguards for protecting average citizens from this huge theft? Very disappointed in our legal system….

R. 15 at 42.

Victims also have expressed frustration that there will be no significant repayment of restitution by Ms. Fetek. Victims from two estates also have reported that the law firm's insurance carrier has sought to deny coverage for their losses, claiming that Ms. Fetek was not acting within the scope of her employment when she engaged with clients with little or no supervision, worked on the estates with no supervision, sent them false documents on behalf of

6

the firm, and caused false documentation to be filed in probate court. Given these frustrations, many victims view a substantial prison term as the only possible measure of justice. A light sentence would further undermine the victims' confidence in the legal system and send a message that the federal criminal justice system does not view the financial and emotional harm they and their deceased loved ones suffered as significant. As one of the victims explained when suggesting a sentence of imprisonment of at least 5 years, "A monetary punishment means nothing if she does not have the means to pay it. I feel she need some time in prison to think about the people she hurt. Maybe in prison she can get some help for her addictions as well." *Id.* at 51. This victim's sentiments were not unique. *See id.* at 36, 39, 42, 47-48, 53, 57, 59.

Finally, a sentence of 48 months would assist in providing Ms. Fetek with medical care, *see id.* ¶¶ 68-70, allow Ms. Fetek to address her use of controlled substances, and provide general deterrence to others.

### D. A 48-month sentence is within the advisory guideline range.

As the PSR explains, Ms. Fetek's guideline range is 41 to 51 months. This is the result of a recommended base offense level of 7, a 14-level increase for causing a loss of between $550,000 and $1.5 million, a 2-level increase based on the number of victims, another 2-level increase for abuse of a position of trust, and a 3-level decrease for acceptance of responsibility. *See* R. 15 ¶¶ 38-48, 93. A sentence of 48 months falls squarely within that range.

### E. A guideline sentence would avoid unwarranted disparities.

Sentencing Ms. Fetek to 48 months in prison would avoid unwarranted disparities. Such a sentence would be within the guideline range as recommended by the government. That necessarily would avoid unwarranted disparities and fully comply with § 3553(a)(6). *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009).

7

**III.    Conclusion.**

Based on all of the § 3553(a) factors, the Court should impose a sentence of 48 months.

Dated at Milwaukee, Wisconsin, this 13th day of March, 2019.

>Respectfully submitted,
>
>MATTHEW D. KRUEGER
>United States Attorney
>
>By:
>
>s/Richard G. Frohling
>First Assistant United States Attorney
>Wisconsin Bar Number 1021952
>E-Mail: richard.frohling@usdoj.gov
>Attorney for Plaintiff
>Office of the United States Attorney
>517 East Wisconsin Avenue, Room 530
>Milwaukee, Wisconsin 53202
>Telephone: (414) 297-1700
>Fax: (414) 297-1738